UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO.: 1:07-CR-14-TLS |
| | ) | 1:11-CV-364 |
| DAWAN A. WARREN | ) | |

**OPINION AND ORDER**

This matter is before the Court on the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person In Federal Custody [ECF No. 144] filed on October 19, 2011. The Defendant, Dawan A. Warren, contends that his trial counsel provided ineffective assistance during his second trial by failing to adequately prepare for trial and by pursuing an unreasonable defense strategy. For the reasons set forth in this Opinion and Order, the Defendant's Motion will be granted in part and denied in part. As discussed below, resentencing is appropriate in this case to reflect a term of no more than the maximum sentence of 300 months on Count 1, and to reassess the Defendant's designation as a career criminal offender.

**BACKGROUND**

On January 23, 2007, three males removed monies from the possession of Tower Bank, located at 4303 Lahmeyer Road, Fort Wayne, Indiana. (Loran Aff. 2, ECF No. 1.) One suspect, later identified as Dawan A. Warren, carried a black semiautomatic weapon throughout the robbery. (*Id*. at 2, 4.) Following a brief police investigation, the Defendant and two other suspects were detained at a nearby residence, 4217 Darby Avenue in Fort Wayne. (*Id* at 5.)

1

On February 22, 2007, a grand jury returned a two count Indictment [ECF No. 12] against the Defendant, alleging armed bank robbery and aiding and abetting in Count 1, a violation of 18 U.S.C. § 2113(a) and (d), and 18 U.S.C. §2; and using or carrying a firearm during a crime of violence and aiding and abetting in Count 2, a violation of 18 U.S.C. §924(c), and 18 U.S.C. §2. (Gov. Resp. 1, ECF No. 150.) On March 2, the Defendant entered a plea of not guilty. (*Id*.) Attorney Robert W. Gevers, II, entered his appearance [ECF No. 9] as counsel for the Defendant.

The four-day jury trial commenced on June 3, 2008. The Government presented the testimony of bank employees Janice Peters [ECF No. 62] and Josephina Beck [ECF No. 61] by way of deposition read into the record. The defense presented Shyra Porter as an alibi witness [ECF No. 65]. On June 12, 2008, the Court declared a mistrial after the jury was unable to return a verdict [ECF No. 65]. The Defendant's second trial began on October 1, 2008. The Government once again presented the testimony of Janice Peters and Josephina Beck through depositions read into the record, but the defense did not present an alibi witness [ECF No. 89]. On October 3, the jury found the Defendant guilty of armed bank robbery under 18 U.S.C. §2113(a) and (d), and using or carrying a firearm during a crime of violence under 18 U.S.C. §924(c) and 18 U.S.C. §2 [ECF No. 98]. On January 21, 2009, the Court sentenced the Defendant to 327 months of imprisonment on Count 1 and 84 months on Count 2 to be served consecutively [ECF No. 112].

After sentencing, the Defendant filed a Notice of Appeal [ECF No. 113] challenging: (1) whether this Court erred when it declared a mistrial and (2) whether there was sufficient evidence for his conviction. The Seventh Circuit subsequently affirmed the judgment of this Court on March 5, 2010 [ECF No. 139]. The Seventh Circuit denied the Defendant's petition for

rehearing [ECF No. 138] on March 5, 2010. On October 18, 2010, the Supreme Court denied the Defendant's petition for Writ of Certiorari.

On October 17, 2011, the Defendant filed a timely, pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 144]. The Government filed its Response [ECF No. 150] on November 30, 2011. The Defendant filed his Reply [ECF No. 155] on February 27, 2012. On February 25, 2013, the Defendant filed a Motion to Supplement [ECF No. 157] ground two of the § 2255 Motion, and on March 15, the Defendant filed a Motion to Expand [ECF No. 158] the record to include the State's Answer to Petition Post-Conviction Relief. The Government filed its Response [ECF No. 162], answering both the Motion to Supplement and Motion to Expand, on August 9, 2013. The Defendant filed his Reply [ECF No. 165] as to both motions on September 11, 2013. Finally, the Defendant filed a Motion for Release of Prisoner in a Habeas Corpus Proceeding [ECF No. 168] on August 7, 2014. The Government filed a Response [ECF No 169] on August 14, 2014. This matter is now ripe for resolution. This Opinion and Order addresses all pending motions.

## DISCUSSION

**A.    Standard of Relief**

A court may grant relief pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[R]elief pursuant to § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States*, 467

F.3d 1063, 1068 (7th Cir. 2006)). "[R]elief is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States,* 366 F.3d 593, 594 (7th Cir.2004) (internal quotation marks and citation omitted).

The Defendant primarily contends, among other things, that he is entitled to relief because Attorney Robert Gevers provided ineffective assistance by failing to adequately prepare for trial and failing to pursue a reasonable defense strategy. To establish ineffective assistance of counsel, a defendant must satisfy the two-prong standard set forth in *Strickland*. First, a defendant must establish that the representation he received "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Second, a defendant must demonstrate that the representation prejudiced his defense. *Id*. at 694. Prejudice is shown when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* When assessing a defendant's claim for ineffective counsel, the court must give strong deference to the assumption that representation of counsel was reasonable. *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011). This presumption of acceptable counsel representation is evaluated within a "wide range of reasonable professional assistance," due to the vast array of legal strategies and in an effort to avoid retrospective review. *Strickland*, 466 U.S. at 689. As such, a defendant must demonstrate that failure by counsel was severe enough to violate the right to assistance of counsel as guaranteed under the Sixth Amendment. *Harrington*, 131 S. Ct. at 787.

**B.  Ineffective Assistance for Failure to Adequately Prepare for Trial and Present an Available Defense**

First, the Defendant alleges that Attorney Gevers failed to adequately prepare for trial and present an available defense. (Mem. in Supp. of Def.'s Mot. to Vacate 4–9, ECF No. 145.) According to the Defendant, counsel was ineffective for:

> (1) failing to conduct necessary and adequate pretrial investigation/preparations; (2) failing to contact, interview and call favorable defense witnesses; (3) failing to marshal, develop and use at the Movant's trial available evidence that was favorable/helpful to the Movant's defense case; (4) and unreasonably failed to pursue various leads as made known through discovery and discussion with the Movant.

(*Id*. at 5.) The Defendant asserts that counsel failed to present his alibi defense during the second trial, despite the fact that this defense was heavily relied on during the first trial and helped result in a hung jury and mistrial. (*Id*.) In providing this defense, the Defendant claims counsel should have made further investigations and preparations in order to present the witness testimony of Kent Cooper, Shyra Denise Porter, Steven Warren, and Shamara Davis. Shyra Porter testified during the first trial and the Defendant reasons that her like testimony would have created doubt in the minds of the jury. (*Id*. at 6.) The Defendant asserts that Kent Cooper and Steven Warren could have supported the testimony of Shyra Porter. (*Id*. at 7.) Shamara Davis testified at the trial of Joseph Lewis, one of the other suspects. (*Id*. at 6.) The Defendant claims he was prejudiced as there was a reasonable probability of a different outcome if the jury had been presented with the testimony of Mr. Cooper, Ms. Porter, Mr. Steven Warren, and Ms. Davis. (*Id*.) In response, Attorney Gevers claims that he fully disclosed to the Defendant that the Government had new evidence in the case against him and that presenting the alibi defense during the second trial was no longer appropriate. (Gov. Resp. 3, ECF No. 150.) Thus, the Government argues that the actions of Attorney Gevers fall well within the wide latitude given to acceptable "trial strategy." (*Id*. at 4.)

In *Strickland*, the Supreme Court stated that factors such as the experience of the attorney, the inconsistency of pursued and unpursued defenses, and the potential for prejudice from taking an unpursued strategy of defense are all relevant when evaluating particular strategic decisions of counsel. 446 U.S. at 681. Importantly, counsel decisions not to investigate or pursue a particular line of reasoning are given a "heavy measure of deference." *Id*. at 691. Further, if counsel has reason to believe there is no need to pursue a potential inquiry or defense due to statements made by a defendant, "the need for further investigation may be considerably diminished or eliminated altogether." *Id*. A defendant carries the burden of showing the court what would have resulted from such an investigation. *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003); *see also United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir. 1990) (A petitioner must present "a comprehensive showing as to what the investigation would have produced."). Additionally, a defendant must show that he has been substantially prejudiced by the actions of counsel. In other words, when an error on the part of counsel results in the omission of testimony, a defendant must show with reasonable probability that but for the error, the result of the proceeding would have been different. *Strickland*, 446 U.S. at 694. "[I]f counsel has investigated witnesses and consciously decided not to call them, the decision is probably strategic." *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005) . Similarly, when a defendant claims counsel failed to call a particular witness, he must "make a specific affirmative showing as to what the missing evidence would have been, and prove that this witness's testimony would have produced a different result." *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994.)

Here, the Defendant asserts that Attorney Gevers provided ineffective assistance because he failed to further investigate and present the witness testimony integral to an alibi defense. The

Defendant maintains that counsel should have pursued further into an investigation of the witnesses that would have testified in support of the alibi defense at the Defendant's second trial. The Defendant believes counsel failed to thoroughly conduct pretrial investigations by not contacting, interviewing, or calling these witnesses, which resulted in counsel's failure to put the alibi defense before the jury during the second trial. (Mem. in Supp. of Def.'s Mot. to Vacate 4–9, ECF No. 145.) However, the record clearly supports the Government's claim that following the Defendant's first trial, the Government developed new evidence that contradicted the testimony given by Shya Porter during the first trial. (Gov. Resp. 3, ECF No. 150.) The Government notes that following the first trial, Attorney Gevers moved this Court for the appointment of an investigator to look into locating, questioning, and issuing subpoenas to witnesses that might be favorable to the Defendant [ECF No. 71]. Counsel made an investigation of the witnesses, but was aware that if he presented the alibi defense the Government would introduce the evidence in contradiction to Shya Porter's testimony, discrediting her claims and the defense. (*Id*. at 4.) Further, Steven Warren's criminal history made him subject to impeachment and Kent Cooper's testimony was not relevant to the time frame of events. (*Id*., Gevers Aff. ¶ 2.) In his affidavit, Attorney Gevers states he believed it unwise to call Shamara Davis and associate the Defendant with the alleged getaway vehicle. (*Id*.) Attorney Gevers maintains these decisions were made with "the trial strategy to avoid conflicting evidence from the defense witnesses among themselves and to distance the Defendant from Mr. Lewis altogether." (Gevers Aff. ¶ 3.) Finally, counsel expressed that these developments were "all relayed to Mr. Warren prior to the second trial." (*Id*. ¶ 2.)

      Even if this decision was determined to be in error, the Defendant failed to demonstrate with reasonable probability that the outcome would have been different. As Attorney Gevers

7

proceeded forward both with an investigation of the witnesses and the understanding of the Defendant prior to the second trial, the Court finds that the decision not to call witnesses was a objectively reasonable trial strategy in light of the new evidence proffered by the Government. Additionally, the Defendant has failed to comprehensibly show he was prejudiced by these actions. Thus, because the Defendant has not satisfied either prong under *Strickland*, the Court finds that Attorney Gevers's decision not to present an alibi defense was effective assistance of counsel.

C.      **Ineffective Assistance for Pursing Unreasonable Defense Strategy**

Next, the Defendant challenges counsel's defense strategy as unreasonable. (Mem. in Supp. of Def.'s Mot. to Vacate 9–11, ECF No. 145.) The Defendant argues that Attorney Gevers provided ineffective counsel when he failed to use important information, failed to object to the testimony of prosecution witnesses by deposition, stipulated to evidence, failed to use the contradictions of prior witness statements to impeach their testimony, deprived the Defendant of his right to testify, and failed to object when the Defendant was sentenced to 27 months beyond the statutory period for armed bank robbery. In response, the Government states that it was the decided defense strategy of both the Defendant and Attorney Gevers to "attack the DNA analysis." (Gov. Resp. 5, ECF No. 150.) Further, counsel maintains the Defendant was informed of all changes in strategy prior to proceeding through the second trial. (Gevers Aff. ¶ 3.)

1.      *Failure to Present Information Integral to Alibi Defense*

The Defendant claims that Attorney Gevers provided ineffective assistance of counsel when he did not present information integral to his alibi defense. (Mem. in Supp. of Def.'s Mot.

to Vacate 9–10, ECF No. 145.) As previously noted, counsel is given wide latitude in the exercise of defense tactics. Therefore, a defendant must show that the representation he received fell below an objective standard of reasonableness and that this deficient performance prejudiced the defense. *Strickland*, 466 U.S. 694. Again, a defendant has the burden to show that his counsel made errors so serious as to cease the function of counsel guaranteed under the Sixth Amendment. *Harrington*, 131 S. Ct. at 787.

The Defendant begins this claim for ineffective assistance by contending that he specifically told counsel he had been inside the vehicle found at the residence and had "horse-played" with the latex gloves inside the vehicle. (Mem. in Supp. of Def.'s Mot. to Vacate 6, ECF No. 145; D. Warren Aff. ¶ 3.) Therefore, the Defendant charges that it was unreasonable for counsel to argue before the jury that the Defendant's DNA was not inside the vehicle or on the latex gloves. (Mem. in Supp. of Def.'s Mot. to Vacate 10, ECF No. 145.) The Defendant further claims that counsel should not have attempted to challenge the DNA evidence presented by the Government. (*Id.*) Attorney Gevers contends that while he was told of the Defendant's presence in the car, he recalls no conversation in which the Defendant informed him of contact with the latex gloves. (Gevers Aff. ¶ 3.) Counsel did not specifically tell the jury that it was not the DNA of the Defendant; however, he again reiterates that it was the decided strategy of both himself and the Defendant to "attack the DNA evidence and stay away from the car." (*Id.* ¶ 4.)

Similarly, the Defendant claims he advised counsel that a twenty dollar bill (from the bank robbery) was recovered inside his pocket because he was at the residence to collect on a debt owed by Joseph Lewis. (Mem. in Supp. of Def.'s Mot. to Vacate 10, ECF No. 145.) However, the Defendant states that counsel failed to explain the circumstances behind the money and instead claimed the money did not come from the Defendant. (*Id.*) Attorney Gevers explains

that he was aware of the Defendant's assertions concerning the twenty-dollar bill, but it was inconsistent with the new evidence obtained by the Government prior to the second trial. (Gevers Aff. ¶ 3.) As counsel could not present the alibi defense without hurting the Defendant's case, he instead challenged the jury to instead think about the logic of the situation:

> If you were involved in the robbery of that bank and you were involved in trying to stash the money, the clothes and everything in the attic of this home by an attic fan, why do you keep a $20 bill in your pocket? Why would you do that? If you were involved, and you weren't concerned about being found out, and you were a robber, why don't you have more than twenty bucks stuffed in your pocket? I can tell you this, one thing that is a reasonable inference from the evidence presented before you is that someone in a third pair of pants and a white canvas bag walked off with six thousand six hundred and some odd dollars stuffed in their pockets. Now, that's a bank robbery. That's not a bank robbery (Holding up one of the exhibits).

(Tr. Vol. 10/2/08, at 147.) In his affidavit, Attorney Gevers again reiterated that he could not present the Defendant's alibi defense because "the fact that he was there to collect twenty dollars was not consistent with the evidence that would be presented to rebut and impeach Ms. Porter." (Gevers Aff. ¶ 4.)

The Defendant also contends counsel was ineffective for not introducing evidence that the suspect in the bank robbery wore a size 11 ½–12 shoe, while the Defendant only wears a size 9 ½. (*Id*. at 7.) In his affidavit, Attorney Gevers contends, and the record supports, that he did in fact, "note to the jury and argue same that Mr. Warren's shoe size was smaller than that found at the scene." (Gevers Aff. ¶ 3.) Counsel also questioned the fact that no shoes were presented into evidence, stating: "There's no evidence as to what size shoe any one of these three young men that were in that house were wearing. There's no indication whatsoever that this guy (Indicating) wears a size eleven, twelve or bigger." (Tr. Vol. 10/2/08, at 143–44.)

Here, the actions of Attorney Gevers were objectively reasonable under the circumstances and the Defendant simply cannot meet his high burden to challenge the defense

strategy. The record supports the assertion of both the Government and Attorney Gevers that evidence presented prior to the second trial, which contradicted the Defendant's alibi defense and the testimony given by Shyra Porter at the first trial, made attacking the validity of the DNA evidence presented a reasonable defense approach. (Gov. Resp. 5, ECF No. 150; Gevers Aff. ¶ 3.) The record also shows that Attorney Gevers questioned the DNA evidence throughout the second trial, pointing out faults in the Government's contentions until the end of closing arguments. (Tr. Vol. 10/2/08, at 132–50.) As the representation the Defendant received was objectively reasonable under the circumstances, and the Defendant has made no comprehensive showing that counsel prejudiced his defense, this claim for ineffective assistance must also fail.

2.  *Failure to Object to the Testimony of Prosecution Witnesses by Deposition*

Further, the Defendant challenges counsel's alleged failure to object to the testimony of the prosecution's witnesses being presented through deposition. (Mem. in Supp. of Def.'s Mot. to Vacate 11–12, ECF No. 145.) As they were unavailable, Tower Bank employees Janice Peters and Josephina Beck presented testimony through deposition during the Defendant's first trial. (*Id*. at 11.) Both witnesses also provided testimony through deposition for the Defendant's second trial. The Defendant claims that because there was no showing that the witnesses were unavailable due to "exceptional circumstances," counsel should have objected to this testimony through deposition in order to protect the Defendant's right to confront the witnesses against him. (*Id*. at 12.) The Defendant contends the failure to object to these depositions prejudiced his case because the prosecution may have been unable to produce these two essential witnesses and evidence developed after the original depositions were given may have changed cross-examination strategy. (*Id.*)

The Government contends that on October 2, 2008, the Defendant himself stipulated to the admissibility of this testimony through deposition so that the depositions could be read into the record. (Gov. Resp. 2, ECF No. 150.) The record shows that both counsel and the Defendant did in fact agree to and sign stipulations into the record allowing the testimony of both Janice Peters and Josephina Beck through deposition [ECF Nos. 91 and 92]. Attorney Gevers supports this by stating, "I did not enter into any stipulation as to evidence without full consultation with and acquiescence from Mr. Warren. To the best of my recollection this included the reading of witness depositions/transcripts in lieu of live testimony." (Gevers Aff. ¶ 4.) Counsel's cross-examination of the witnesses was also read into the record during trial. (Tr. Vol. 10/1/08, at 146–53, 157–58.) Finally, Attorney Gevers challenges the Defendant's claims of prejudice, explaining, "the non-emotional reading of the transcript was more effective for the defense strategy than having emotionally-charged lived testimony for the jurors to see and hear." (Gevers Aff. ¶ 5.) As the record supports that the Defendant agreed to the witness testimony being presented by deposition, fails to show that counsel's action was objectively unreasonable, and does not show prejudice, this claim for ineffective assistance is without merit.

3.  *Failure to Object to Improper Admission of Exhibits and Stipulating to Evidence*

The Defendant also challenges counsel's failure to object to alleged improper admission of exhibits and stipulation to evidence. (Mem. in Supp. of Def.'s Mot. to Vacate 12–13, ECF No. 145.) Defendant contends that counsel was inadequate, "by: (1) failing to object to prosecution having evidence laying out in plain view of jurors before being admitted; (2) failure to object to Court allowing unadmitted evidence to be viewed during deliberation; (3) failing to object to the unlawful admittance of Exhibit 53, the Movant's putative buccal swabs." (*Id*. at 13.) The

Defendant claims that without the circumstantial evidence obtained from the buccal swabs there is reasonable probability of a different outcome. (*Id*.)

The record supports the fact that Attorney Gevers did not enter into any stipulation of evidence without the full knowledge of the Defendant, as is evidenced by the stipulations of fact that are signed by both the Defendant and counsel. (Gov. Resp. 4, ECF No. 150.) Further, the record supports that the Defendant was not prejudiced by any pieces of evidence that were visible to the jury prior to being admitted as evidence, as the jury was instructed by the Court that evidence to be considered consisted of the testimony of witnesses, the exhibits admitted in evidence, and stipulations. [ECF No. 97, Court's Instruction No. 2] Again, the record shows and the Government reiterates that it was the decided strategy of the Defendant and Attorney Gevers to dispute the DNA evidence. Attorney Gevers maintains that it was in fact the Defendant's decision to allow the buccal swabs into evidence in light of the new defense strategy. (Gevers Aff. 3.) Further, the Government contends that the Defendant provided no grounds on which to object to the admission of the buccal swabs. (Gov. Resp. 5, ECF No. 150.) As such, counsel made an objectively reasonable decision not to object to the buccal swabs. The Defendant again falls short of his burden to prove ineffective assistance of counsel.

*4.    Concession of Defendant's Guilt During Closing Arguments Without Consent*

Additionally, the Defendant challenges counsel's alleged concession of Defendant's guilt during closing arguments without his consent. (Mem. in Supp. of Def.'s Mot. to Vacate 13–14, ECF No. 145.) The Defendant states that counsel's comments cannot be characterized as an acceptable defense strategy when the Defendant did not agree to an admission of guilt and repeatedly proclaimed his innocence to counsel. Further, the Defendant claims that this

13

concession of guilt severely prejudiced his defense and "took away . . . the government's burden to prove its case." (*Id*. at 14.)

Under the *Strickland* standard, counsel's concession of a client's guilt without their consent violates both the constitutional rights of a client and the ethical obligations of an attorney. *United States v. Holman*, 314 F.3d 837, 843 (7th Cir. 2002). Therefore, this alleged admission of the Defendant's guilt would qualify as clear prejudice if true. The Defendant focused on the following statements of counsel during closing arguments:

> But there are pieces of this case that could have been brought before us in the last two days to truely[sic] prove this case beyond a reasonable doubt, to truly[sic] show that Dawan Warren is guilty of these alleged offenses….The government could have closed the door on Dawan Warren. They could have had proof.

(Mem. in Supp. of Def.'s Mot. to Vacate 13–14, ECF No. 145; Tr. Vol. 10/2/08, at 148–49.) However, the record plainly shows that the few lines focused on by the Defendant in this claim are taken out of context. During this portion of the transcript, Attorney Gevers explained to the jury that the Government was required to, but did not prove their case beyond the standard of a reasonable doubt. With surrounding context the statements from closing arguments are as follows:

> Does that mean, because they found him at that home, that he was at Tower Bank? No. There is doubt about that. Piece by piece, the Government has said we have proven our case to you beyond a reasonable doubt. But there are pieces of this case that could have been brought before us in the last two days to truly prove this case beyond a reasonable doubt, to truly show that Dawan Warren is guilty of these alleged offenses. But they haven't. The best they can do is a non-definitive profile in a glove not in any way tied to him. The best they can do is say there's a bait bill that may have been taken from him . . . . The Government could have closed the door on Dawan Warren. They could have had proof. But they put blinders on. They just assumed that because he was there, and even as Ms. Lowery tells us, mere presence in that home does not make this young man guilty of robbery. But they haven't. They haven't proven their case, therefore, all they have proven is that Dawan Warren was in a home with two other guys and all this stuff was found up in the attic of that home. Period. That's it.

(Tr. Vol. 10/2/08, at 148–49.) Again, high deference is afforded to counsel in a review of his actions and, when viewed in its entirety, the transcript depicts a closing argument that falls well within the reasonably objective standard required of representation. (*See* Tr. Vol. 10/2/08, at 132–50.) As such, this claim for ineffective assistance will also fail.

5.  *Failure to Use Prior Witness Statements to Impeach Their Testimony*

Next, the Defendant challenges counsel's alleged failure to use the prior witness statements of Craig Robison, a detective with the New Haven Police Department, and Jeffrey Haines, a Fort Wayne Police Officer, to impeach their testimony during the second trial. (Mem. in Supp. of Def.'s Mot. to Vacate 14–15, ECF No. 145.) The Defendant asserts that statements made by law enforcement changed between the time the initial report was filed and when testimony was given at the second trial. (*Id*. at 15.) According to the Government, the Defendant's assertion that the testimony of officers Craig Robison and Jeffrey Haines was "strategically altered" is too vague to constitute a valid assertion on the matter. (Gov. Resp. 5, ECF No. 150.) As the Defendant gives imprecise examples of conflicting testimonies, he fails to prove that Attorney Gevers acted outside the objectively reasonable standard required of representation by not moving to impeach the testimony. Similarly, the Defendant fails to make a comprehensive showing of prejudice. Therefore, this claim of ineffective assistance will fail as well.

6.  *Depriving Defendant of His Right to Testify at Trial*

Further, the Defendant challenges counsel's alleged deprivation of his right to testify at trial. (Mem. in Supp. of Def.'s Mot. to Vacate 15–16, ECF No. 145.) The Defendant contends that he would have testified had he known that counsel did not intend to present the Defendant's

15

alibi defense. (*Id*. at 16.) The Government contends that after being advised by Attorney Gevers on the benefits and risks of testifying, it was the Defendant who made the decision not to testify. (Gov. Resp. 5, ECF No. 150.) In his affidavit, counsel confirms that, similar to all clients, the Defendant was informed of, "the dangers in testifying and the pitfalls of cross examination and the standards of proof beyond a reasonable doubt." (Gevers Aff. ¶ 3) Because the record shows that the Defendant made an informed decision not to testify, and the Defendant fails to display that the representation he received from counsel fell below the objective standard of reasonableness, there can be no successful argument for ineffective assistance made on this claim. Furthermore, the record shows that the Defendant was advised prior to the second trial that, in light of the Government's new evidence contradicting the expected testimony of alibi witnesses, it would be unwise to pursue an alibi defense.

### 7. *Failure to Object When Court Sentenced Defendant to 27 Months Beyond Statutory Period for Armed Bank Robbery*

The Defendant challenges counsel's failure to object when this Court sentenced the Defendant to 27 months beyond the statutory period for armed bank robbery. (Mem. in Supp. of Def.'s Mot. to Vacate 16–17, ECF No. 145.) Under § 2113(a) and (d), the Court can sentence a Defendant to a statutory maximum of 25 years, or 300 months, imprisonment. (Gov. Resp. 5, ECF No. 150.) However, the Defendant was sentenced to 327 months on Count 1. Both parties agree that the appropriate remedy is for the Defendant to be resentenced. In a footnote, the Government further suggests that the Court may still impose a total sentence of 411 months if the sentence on Count 1 is reduced to the maximum of 300 months and the statutory maximum of 111 months is imposed for Count 2. (*Id*. at 6.) As both parties concur that the appropriate remedy

16

is resentencing to reflect a term of no more than the maximum sentence of 300 months on Count 1, the claim for ineffective assistance on this issue is moot.

**D.     Motion to Supplement and Motion to Expand**

On February 25, 2013, the Defendant filed a Motion to Supplement [ECF No. 157] his § 2255 Motion. The Defendant contends that his conviction for robbery before the Dekalb County Superior Court in Cause No. 17D01-9601-CF-036, one of the two convictions used to secure his status as a career offender, was overturned upon the receipt of new evidence, making his classification as a career criminal invalid. (Motion to Suppl. 3, ECF No. 157.) On March 15, the Defendant filed a Motion to Expand [ECF No. 158] the record to include the State's Answer to Petition Post-Conviction Relief. In this Answer the state agreed that because another person claimed responsibility for the crime, the Defendant's conviction should be set aside [ECF No. 158, Exhibit O]. The Judgment of Conviction in Cause No. 17D01-9601-CF-036 was officially set aside by Order of the Superior Court of DeKalb County on January 29, 2013 [ECF No. 157-2, Exhibit M].

> Under U.S.S.G. §4B1.1, a defendant is considered a career criminal if:
>
> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. §4B1.1(a). Here, the Defendant had two violent felony convictions that qualified him as a career criminal: the first for aiding in a robbery in 1996, and the second for robbery in 1997. However, as the Judgment of Conviction was recently set aside in the first felony conviction, that conviction can no longer be part of the basis for categorizing the Defendant as a career criminal.

The Defendant argues in his Motion to Supplement that his appellate counsel provided ineffective assistance of counsel for failing to challenge his classification as a career offender. In Response [ECF No. 162 (responding to both the Defendant's Motion to Supplement and Motion to Expand)], the Government does not challenge the Defendant's request to supplement/expand the record. Instead, the Government responds to the substance of the Defendant's argument and argues that appellate counsel was not ineffective because the Defendant did not raise objections to his career offender classification or to inclusion of "recency points" in the calculation of the Defendant's criminal history before the trial court. As such, the Government argues that these arguments were waived and could not be raised on appeal by appellate counsel. In Reply [ECF No. 165 (replying to both the Defendant's Motion to Supplement and Motion to Expand)], the Defendant does not address the Government's waiver arguments. Instead, the Defendant continues to reiterate the impropriety of his career offender status in light of the fact that his state robbery conviction has been set aside.

The Government did not object to the Defendant's request to supplement or expand the record, but rather addressed the substance of whether the Defendant's appellate counsel was ineffective. Therefore, the Court will grant the Defendant's Motion to Supplement [ECF No. 157] and Motion to Expand [ECF No. 158]. The Defendant initially argued his appellate counsel was ineffective for failing to challenge his career offender designation, but in reply he asserts that "[r]egardless of the merit of [his] ineffective assistance of counsel claim, the issue still remains [that his] now invalid classification as a career criminal offender" improperly led to a sentencing enhancement. (Reply to Mot. to Supp. 2, ECF No. 165.) The Defendant did not address the Government's waiver arguments or either *Strickland* prong in reply, apparently abandoning this ineffective assistance claim and focusing on the necessity to reconsider his

18

career offender designation. Therefore, the Court finds that the Defendant has failed to meet his burden for this claim for ineffective assistance. However, in light of the State court setting aside the Defendant's first conviction for robbery, it is appropriate at resentencing to reassess the Defendant's status as a career offender.

**E.     Motion for Release**

Finally, on August 7, 2014, the Defendant filed a Motion for Release of Prisoner in a Habeas Corpus Proceeding [ECF No. 168] pursuant to Rule 23(b) of the Federal Rules of Appellate Procedure. The Defendant requests to be released from custody through bail on personal recognizance, arguing that his conviction is unconstitutional due to ineffective assistance of counsel. The Government argues that the Defendant's motion is premature and that Rule 23(b) does not provide a mechanism for the release of a prisoner whose habeas corpus petition has not been decided. The Government is correct. Rule 23(b) provides:

> (b) While a decision not to release a prisoner is under review, the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court, may order that the prisoner be:
>
>     (1) detained in the custody from which release is sought;
>
>     (2) detained in other appropriate custody; or
>
>     (3) released on personal recognizance, with or without surety.

Fed. R. App. P. 23(b). This rule does not require, but gives the Court the ability to release a prisoner on personal recognizance while a decision not to release a prisoner is under review. At the time the Defendant filed his motion, a decision had not yet been made on his habeas corpus petition. Therefore, there was no decision under review, making Rule 23(b) inapplicable. Therefore, the Defendant's request for release will be denied as moot.

# CONLUSION

For the forgoing reasons, the Court GRANTS IN PART and DENIES IN PART the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 144]. The Court GRANTS the Defendant's Motion to Supplement [ECF No. 157] and Motion to Expand the Record [ECF No. 158]. The Defendant's Motion for Release of Prisoner in a Habeas Corpus Proceeding [ECF No. 168] is DENIED AS MOOT. Resentencing is appropriate in this case to reflect a term of no more than the maximum term of imprisonment of 300 months on Count 1, and to reassess the Defendant's designation as a career criminal offender. The Court ORDERS this cause assigned to the Northern District of Indiana Federal Community Defenders, Inc., 31 E. Sibley St., Hammond, Indiana 46320 (219-937-8020), for the appointment of an attorney to represent the Defendant in this matter. One month after the appointment of new defense counsel, the Court will hold a telephonic status conference with counsel for the Defendant, counsel for the Government, and a probation officer with the United States Probation Office to advise the Court on issues going forward with resentencing. The Clerk is DIRECTED to email this Order to the Northern District of Indiana Federal Community Defenders, Inc.

SO ORDERED on October 31, 2014.

s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT
